ROGERS-RUGER COMPANY, Appellant, vs. BOARD OF SCHOOL DIRECTORS OF THE TOWN OF BRULE, Respondent.

*March 31—April 20, 1909.*

*Pleading: Allegations on information and belief: Oral demurrer: Schools and school districts: Meetings: Notice: Proof of failure to notify: Evidence: School boards: Auditing accounts: Issuing orders: Trial: Reception of evidence: Invalid orders.*

1. An answer denying upon information and belief that certain school orders mentioned in the complaint were legal orders or created any indebtedness, "but the same were void for the reasons hereinafter stated," and thereafter averring positively the facts upon which such invalidity was predicated, is sufficient as against an oral demurrer.

2. Such answer does not aver the facts pleaded upon information and belief, but pleads that upon those facts the defendant was informed and believed that such orders were not legal orders.

3. The answer "yes" by a member of a board of school directors to the question whether or not there were any meetings of the board which he did not attend because not notified, is an insufficient mode of proving lack of notice.

4. Under secs. 518 to 530, Stats. (1898), the power of the board of school directors under the township system, or the executive committee thereof acting as a board, to create obligations against the district and to audit claims and control the issuing of orders, carries with it the duty to do so where the public interests are concerned.

5. In an action on school orders the burden of proof is upon the defendant to sustain an affirmative defense of invalidity of the meetings at which the orders were authorized, and such defense is not sustained by the offer of a page here and there from the records of meetings of the school board, without further showing that the meetings were in fact irregular, since there may have been audit and allowance of the claims or record of notices or of adjournments on the omitted pages.

6. In the absence of evidence that the president and secretary of a school board were to receive no salary, or what orders covered their salaries, it cannot be said that orders issued to such officers for services are void.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Reversed.*

*H. V. Gard,* for the appellant, cited, among other authorities, *Carpenter v. Momsen,* 92 Wis. 449, 65 N. W. 1027, 66 N. W. 692; *Peacock v. U. S.* 125 Fed. 583; 1 Ency. Pl. & Pr. 805; 21 Am. & Eng. Ency. of· Law (2d ed.) 20; *Brown v. School Directors,* 77 Wis. 27, 45 N. W. 678; secs. 686, 709, 715, Stats. (1898); sec. 2560, Id.; secs. 820, 821, 823, 446, 523, 533, 540, 519, 528, Id.; *Wilder v. Rio Grande Co.* 41 Fed. 512; *Miller v. Jacobs,* 70 Wis. 122, 35 N. W. 324; *State ex rel. Wunderlich v. Kalkofen,* 134 Wis. 74, 113 N. W. 1091.

For the respondent there was a brief by *Grace & Hudnall* and *C. R. Fridley,* and oral argument by *G. B. Hudnall.* Among other references upon the part of the respondent were the following: *Corning v. Meade Co.* 102 Fed. 57; *Perkins Co. v. Graff,* 114 Fed. 441; *Phillips v. Carver,* 99 Wis. 561, 75 N. W. 432; sec. 2668, Stats. (1898); *Pearson v. Neeves,* 92 Wis. 319, 66 N. W. 357; secs. 521, 522, Stats. (1898); *Doyle v. Gill,* 59 Wis. 518, 18 N. W. 517; *Troewert v. Decker,* 51 Wis. 46, 8 N. W. 26; *Gates v. Paul,* 117 Wis. 170, 94 N. W. 55; *Deuster v. Mittag,* 105 Wis. 459, 81 N. W. 643; secs. 2829, 4549, Stats. (1898); *Schierl v. Baumel,* 75 Wis. 69, 43 N. W. 724.

TIMLIN, J.    The plaintiff, claiming as assignee of the several payees, brought this action against the defendant to recover on thirty-four school orders aggregating $964.48.    It had judgment on nineteen of these orders and it was denied recovery on fifteen orders: seven of them because issued to officers of the school board for services rendered and money expended by them contrary to statute, and four of these seven and eight other orders, making up the fifteen rejected orders, because directed to be issued at invalid meetings of the board of school directors as stated in the conclusions of law of the superior court.    Concerning seven orders above referred to, the finding of fact was that six of them were issued to Thomas

Doherty for services rendered by him for said school board at a time when he was the president of the board of school directors, and one of them was issued to Arthur Piefke for livery and railroad fare expended by him while secretary of the board of school directors, and with reference to the twelve orders above mentioned the finding of fact was that they "were directed to be issued at special meetings of said board of school directors held on the dates of their issuance, at which meetings there were present only two members of said board, to wit, said Thomas Doherty and Arthur Piefke, and that no notice of any of said meetings was given, and the third member of said board of school directors, said R. J. Davis, had no notice or knowledge of said meetings, any or either of them." It was also specially found that one of these orders was issued at a special meeting of the board at which only the secretary was present, and that said meeting had not been called and no notice thereof given to said R. J. Davis.

The appellant first contends that its oral demurrer to the answer should have been sustained because the answer denies upon information and belief that the orders were legal orders of the defendant or created any indebtedness, and that this was a defense resting upon record evidence within the possession and knowledge of defendant and therefore not available under a denial based merely upon information and belief. We do not find it necessary to determine the correctness of this as a legal proposition, because we do not construe the answer as resting merely upon information and belief. The averment is:

"The defendant denies upon information and belief that the orders mentioned and described in the complaint were legal orders of said defendant or created any indebtedness of which said orders would be evidence, but the same were void for the reasons hereinafter stated, viz."

Thereafter it is averred positively that the claims for which said orders were issued were not audited or allowed at

any legal meeting of said school board, and that certain orders. described in the complaint were issued to Thomas Doherty,. president of the school board, in part for services and expenses as such president, and in part for merchandise and supplies sold by him to the board while such president, contrary to the statute, etc. This answer was sufficient as against the oral demurrer, and is not to be construed as averring the facts above referred to upon information and belief, but as. pleading that upon such facts the defendant was informed and believed that the orders were not legal orders of the school district. This is something like the ancient form of plea and is sufficient as an answer.

The appellant next presents that the findings of fact in the particulars above noted are not supported by evidence. The evidence offered consisted of the thirty-four school orders and page 266 of the record of the school board, which states that. a meeting was held July 8, 1905, at which were present Doherty and Piefke, and a resolution passed to employ an attorney, and the following orders were drawn, giving a list of orders numbered 274 to 291, inclusive, the names of the persons to whom drawn, and the consideration for which each was issued and the amount of each, with a statement, "No· further business. Adjourned. A. Piefke, Secretary," followed by the word "Approved." Among the eighteen orders. listed are Nos. 276 and 277, issued to Thomas Doherty, and Nos. 276, 277, 286, and 289, found by the court to be invalid because issued at a special meeting of 'which there was no notice given and only two directors present. There was next offered in evidence page 250 of this record book, containing the· minutes of a meeting of the school board held March 1, 1905, present Doherty and Piefke. The record is identical in form with that on page 266, and at this meeting among the list of orders is one of the disallowed orders which appears in both classes of disallowed orders, namely, an order to Piefke for livery hire, etc. The court allowed the plaintiff judgment.

for at least one order in this list, namely, No. 144, issued to L. Hansen for "services." Page 253 of the record book was next offered in evidence, containing the minutes of a meeting of the school board on March 29, 1905, present Doherty, Geary, and Piefke, and containing a list of orders drawn, among them some orders which were allowed by the court in its judgment and one order, No. 194, to Thomas Doherty, which was disallowed because issued to a member of the board for services. These minutes are like those of the meeting of July 8, 1905, in form. The defendant next offered in evidence pages 260 and 261 of this book, containing the minutes of a meeting of May 13, 1905, at which were present Doherty, Piefke, and Geary, and which recited: "The following orders were drawn." In the list of orders following is one to Thomas Doherty for services, which was disallowed because issued to a member of the board. Other orders issued at this meeting and in this manner were allowed, the form of minutes the same as heretofore noted. Page 264 of this record, containing the minutes of a meeting of June 13, 1905, present Doherty and Piefke. It is stated that "the following orders were drawn." Among the list of orders is one to Thomas Doherty for services, which was disallowed because issued to a member of the board. Page 265 is the same as the last foregoing, and contains one order to Doherty disallowed. Page 268, the same; page 270, the same. This last refers to a meeting of September 26, 1905. Also pages 271 and 272, upon which is recorded a meeting of October 13, 1905, at which meeting Piefke was present and the same form of entry is followed. At least one of the orders so issued at this meeting was allowed in the judgment. Page 275 contains the record of a meeting of December 8, 1905, present Doherty and Piefke, and was in the same form as the other entries, containing a list of orders, some of which were allowed in the judgment. There was no offer of the record book as a whole, and no other pages were offered than those above indicated,

but there are certain unverified bills or claims offered.    Robert J. Davis testified that beginning in July, 1905, the school board consisted of himself, Thomas Doherty, and Arthur Piefke; that he was present at all meetings of the school board which he was notified to attend.    Upon being asked if there were any meetings held at which he did not attend because he did not have any notice of the meeting, he answered, "Yes, sir."    This is a very unsatisfactory and insufficient mode of proving lack of notice.    The clerk then read off the list of orders issued to Thomas Doherty from January 21, 1905, to November 9, 1905, also a list of orders issued to Piefke, and the evidence closed.    All this is very incomplete and indefinite, and the burden of proof was on defendant to make good its affirmative defense.    There may have been audit and allowance of these bills or records of notices or of adjournments on the omitted pages.    We cannot presume there was not.

Under the township system the board of school directors is composed of the clerks of the several subdistricts and the clerks of the joint subdistricts the schoolhouses of which are situated in such town.    Sec. 518, Stats. (1898).    This board has in its corporate capacity the title, care, and custody of all schoolhouses, sites, furniture, apparatus, and other property of all kinds belonging to the subdistricts of the town, and may control the same in such manner as will best subserve the interests of the schools in their town.    Sec. 520.    The board is to hold two regular meetings in each year, one on the second Monday in June and the other on the third Monday in March. Sec. 521, Stats. (1898), and ch. 416, Laws of 1901.    Special meetings may be called by the secretary, or, in his absence or disability, by the president upon the application of one third of the members of the board and by notifying each member personally or by leaving a written notice at his place of residence or business five days before the appointed time stating the time, place, and objects of the meeting.    Sec. 522.    At the first meeting above mentioned they shall elect from their

number a president, a vice-president, and a secretary. Sec. 523. The board may out of funds provided by the town for that purpose purchase or hire sites, houses, and rooms for the use of the school, fence and improve the same, build, enlarge, alter, improve, and repair schoolhouses, outhouses, or other buildings for school purposes, provide suitable water supply, and arrange for the transportation of all pupils who live more than one and one-half miles from the schoolhouse. Sec. 524. This board has supervision and management of all the school-houses. Sec. 526. All powers conferred upon district boards excepting those the exercise of which would conflict with the provisions of law relative to the township system are conferred upon the town boards of directors. Sec. 527. The president, vice-president, and secretary of the town board of directors shall constitute an executive committee who shall execute all orders of the board, and for this purpose all power and authority vested in such board shall be deemed vested in the executive committee, and any duty devolving upon the town board shall devolve upon such executive committee. Sec. 528. The secretary is required to record all the proceedings of the board, to keep accurate and specific account of all expenses incurred by the board, including a list of orders drawn by him, with the date, amount, person in whose favor, and object for which each order was issued. Sec. 530. He shall draw orders on the town treasurer for moneys in the hands of such treasurer apportioned to the town and other moneys for the payment of teachers' wages, the purchase of school sites, the building, buying, hiring, repairing, and furnishing of schoolhouses, and for all other lawful purposes, and each order shall designate the object for which and the fund upon which it was drawn and shall be countersigned by the president. He shall make a financial report annually to a committee of the electors at the town meeting. Ch. 160, Laws of 1901.

Under such statutes there cannot be much doubt that the

school board, or the executive committee acting as a board, has the power to create obligations against the district and to audit claims and to control the issuing of the orders or warrants. The power to do this carries with it the duty to do this where the interest of the public is concerned. *Doyle v. Gill,* 59 Wis. 518, 18 N. W. 517.

It may be that the learned trial judge considered that the whole record of the proceedings of this board was in evidence, but that is not the case that is presented here. Certain pages of the record book are offered in evidence, and these pages show a list of orders drawn at a meeting at which only the president and secretary of the board were present. The meetings which are in evidence are not stated to be special meetings. To presume that these are special meetings is to presume irregularity. There is a suspicion not amounting to proof that the demands in payment for which the rejected orders were drawn were not audited and allowed by the board, but the bill of exceptions is said to contain all the evidence, and it contains no evidence to establish such fact.

With reference to the orders issued to the president and secretary of the board, many of them are probably void, but we cannot say which are void. By ch. 160, Laws of 1901, the secretary might lawfully have orders due to him for salary amounting to $75 in a school year and the president might have orders in the same time amounting to $30. The school year began on the 1st day of July. Sec. 525, Stats. (1898). These salaries are to be audited at the annual meeting thereafter. When such audit took place, if at all, what orders covered these salaries, or whether there were any salaries, is not shown. '

On the whole, it seems that the only proper disposition of this case as the record is presented to us is to reverse the judgment and remand the cause for a new trial, and so enable the parties to present all the evidence bearing upon the legality or illegality of these school district orders.

*By the Court.*—It is so ordered.